In the Matter of LYDIA T. SCHNEIDER, Appellant, *v.* NELSON A. ROCKEFELLER et al., Respondents. (Proceeding No. 1.)

In the Matter of MICHAEL W. SCHWARTZ, Appellant, *v.* NELSON A. ROCKEFELLER et al., Respondents. (Proceeding No. 2.)

Third Department, April 25, 1972.

*Curtis, Hart & Zaklukiewicz* (*Edward J. Hart* of counsel), for Lydia T. Schneider, appellant.

*Richard W. Hulbert* for Michael W. Schwartz, appellant.

*Louis J. Lefkowitz, Attorney-General* (*George D. Zuckerman* of counsel), in person, and for Nelson A. Rockefeller and another, respondents.

*Donald Zimmerman* for Earl W. Brydges, respondent.

*Charles S. Webb* for Perry B. Duryea, Jr., respondent.

STALEY, JR., J. These are appeals by petitioners, Lydia T. Schneider and Michael W. Schwartz, from an order and judgment of the Supreme Court at Special Term, entered March 3, 1972 in Albany County, which denied the motions of petitioner Schwartz for discovery and inspection; dismissed the petition

of petitioner Schneider and the amended petition of petitioner Schwartz; granted the motions of respondents for summary judgment and for judgment declaring that chapter 11 of the Laws of 1972 is valid and constitutional; and adjudged chapter 11 of the Laws of 1972 to be a valid apportionment statute under the Constitution of the United States and the Constitution of the State of New York.

On December 15, 1971, at an extraordinary session of the Legislature, bills were introduced in the respective Houses of the Legislature, on the recommendation of the Joint Legislative Committee on Reapportionment of the New York Legislature, for the purpose of creating Assembly and Senate districts within the State. The bills establish 150 new Assembly districts and 60 new Senate districts and, after amendment and passage by both Houses of the Legislature, the bill was signed into law by Governor Rockefeller on January 14, 1972 as chapter 11 of the Laws of 1972 and became effective immediately thereon.

The main issues raised by petitioners relate to the constitutionality of the law contending that article III of the New York State Constitution is violated in many respects and that the Fourteenth Amendment of the United States Constitution is also violated. The initial assault upon the law is to the effect that it unnecessarily divides counties in the formation of Senate and Assembly districts; that such districts are not " in as compact form as practicable " and not composed of " contiguous territory "; and that the Assembly districts are not " convenient " all of which violates sections 4 and 5 of article III of the New York State Constitution.

In accordance with the mandate in section 4 of article III of the State Constitution that each Federal census taken decennially should be controlling as to the number of inhabitants in the State for the purposes of the apportionment of members of the Senate and Assembly districts, the Joint Legislative Committee on Reapportionment, upon receipt of the 1970 census figures for the State of New York from the United States Bureau of the Census, engaged in the preparation of the reapportionment bills which resulted in the enactment of chapter 11 of the Laws of 1972. The drafters of the proposed legislation adhered to the principle enunciated in the case of *Reynolds* v. *Sims* (377 U. S. 533), that in relation to any apportionment statute " the overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State " (p. 579).

In comparing the Senate and Assembly districts created by chapter 11, the maximum deviation from the State mean (the figure determined by dividing the State's total population by the number of districts) in the Senate is 0.92%, and in the Assembly is 1.81%. The appellants concede that chapter 11 has achieved population equality among Senate and Assembly districts and complies with the Federal rule laid down in *Reynolds* v. *Sims* (*supra*). (Cf. *Kirkpatrick* v. *Preisler*, 394 U. S. 526; *Wells* v. *Rockefeller*, 394 U. S. 542; *Hensley* v. *Wood*, 329 F. Supp. 787; *Howell* v. *Mahan*, 330 F. Supp. 1138.)

Appellants contend that chapter 11 violates the State Constitution because it unnecessarily divides counties in creating some districts. Chapter 11 divides 9 minor counties in the formation of the Senate districts, and 11 minor counties in the formation of the Assembly districts.

The Court of Appeals, in *Matter of Orans* (15 N Y 2d 339), recognizing that reapportionment statutes should produce the result of " one man, one vote " districting also held that absent " unavoidable conflict " with Federal constitutional law, the State Constitution is still controlling on the Legislature in passing any reapportionment redistricting laws. The Court of Appeals further recognized in *Matter of Orans* that the State constitutional provision prohibiting the division of counties in the formation of districts had to yield to the Federal rule of " one man, one vote ", stating (p. 351): The districting outlawed by the United States Supreme Court as well as all former districtings of this State use the county as the basic unit into which both Assembly and Senate districts are molded, but it is patent that under the new rules the integrity of all the counties in these respects cannot be complete. This means not only that it will be impossible to give each county at least one full Assembly district but also that the boundaries of districts cannot in all instances be coterminal with county borders.

The State Constitution prohibition against dividing counties or towns must, therefore, be subordinated to the Federal doctrine of " one man, one vote " which is predominant in reapportionment legislation. It is not discriminatory to cross boundaries of political subdivisions to achieve as nearly as possible equal population among legislative districts. Chapter 11 does not violate constitutional provisions by its division of counties in the formation of districts.

Appellants further contend that sections 4 and 5 of article III of the State Constitution are violated because some of the districts created by chapter 11 are not in " as compact form

as practicable '' and do not consist of '' contiguous territory ''. While it is true that some districts result in oddly shaped designs, the requirement to meet population equality leads of necessity to such an end. As the Court of Appeals stated, with regard to compactness, in *Matter of Dowling* (219 N. Y. 44, 58): '' The constitutional provision does not provide unqualifiedly for compactness. Senatorial districts are not required to be in the form of geometric figures, as a square or perhaps a circle. Such a provision would be impractical and impossible to carry out. It is expressly provided that the districts shall be as *compact as practicable.* This permits of a consideration in good faith of existing lines, topography, means of transportation, etc.''

It is obvious that in the State of New York the population varies greatly between geographical areas and even considerably in density within the larger metropolitan counties. In sustaining the constitutionality of New York's 1970 Congressional districting statute, the Federal court, in *Wells* v. *Rockefeller* (311 F. Supp. 48, 53, affd. 398 U. S. 901) stated: '' To meet the goal of mathematical equality in a State in which population density varies widely, the Legislature had to cope with boundary lines drawn to accomplish this result. Some recognition was undoubtedly given to the pattern laid out in antecedent plans. However, geometric nicety of design must give way to numerical equality. A series of perfect squares, rectangles or even triangles, each containing 409,324 persons, could not be placed upon a map of New York State so that 41 districts would fit congruously therein. Therefore, curious shapes were bound to result. But it is not for this court to direct—even if we possessed the competence—the Legislature to straighten a line here, bend it there or include or exclude various towns in a manner differing from the plans as drawn.''

The compactness requirement has been met by chapter 11 as far as practicable within the overriding objective of achieving population equality among the districts. Districts with similar unaesthetic appearances have previously been sustained by New York courts. (*Matter of Richardson* [*Stark*], 307 N. Y. 269; *Matter of Orans,* 17 N Y 2d 107.)

Appellants' argument that some districts are not contiguous because they are divided by bodies of water, such as Flushing Bay, Jamaica Bay and the Hudson River, is without merit. The term '' contiguous territory '' has been defined as '' territory touching, adjoining and connected, as distinguished from terri-

tory separated by other territory." (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 207).

In none of the districts cited by appellants as being "noncontiguous", is it necessary to travel through an adjoining district to keep within the boundaries of such districts. In addition, the courts have recognized that the requirement of "contiguity" is not violated because part of the district is divided by water. (*Matter of Reynolds,* 202 N. Y. 430; *Ince* v. *Rockefeller,* 290 F. Supp. 878.)

Appellants also contend that the Fourteenth Amendment of the United States Constitution has been violated by chapter 11 by attempting to maximize the political power in the Senate and Assembly of one of the two major political parties, and that such law constitutes a gerrymander which also violates the public policy of the State. Although some courts have held that a challenge to a reapportionment statute upon the ground of partisan gerrymandering raises a "nonjusticiable issue" (*WMCA, Inc.* v. *Lomenzo,* 238 F. Supp. 916, affd. 382 U. S. 4; *Wells* v. *Rockefeller, supra*), the immense difficulty of attempting to resolve such claims is universally acknowledged, and the judicial view generally taken is that, if the mathematics are acceptable, the courts should not review the claims of partisanship that may result in new district lines.

A charge of partisan gerrymandering relative to New York's 1970 Congressional districting statute was rejected by the Federal court in *Wells* v. *Rockefeller,* stating (*supra,* p. 52) : " Plaintiff's approach of a fixed Republican-Democrat society ignores the all-important factors, amongst others, of the candidate's personality, the public's conception of his ability and integrity and the current issues which he may espouse, or offer to espouse, on behalf of his constituents. For this and other reasons we find no legal (certainly no constitutional) basis for accepting plaintiff's speculations as to benefits, except to his own cause, to be derived from his own schematic approach."

We likewise agree that the courts should not speculate as to the motive or the result of political interests in the creation of legislative districts, since the decision of the Legislature in drawing district lines must favor one political party or another, and undoubtedly some districts created by chapter 11 might contain a higher percentage of past Republican voters while other districts will contain a higher percentage of past Democratic voters. This may be the reason why chapter 11 received bipartisan support in passing the Legislature.

Appellant Schwartz, in his amended petition, attacks the constitutionality of chapter 11 upon the ground that it violates section 4 of article III of the State Constitution by establishing a Senate of 60 members.

Section 4 of article III of the State Constitution provides as follows: "No county shall have four or more senators unless it shall have a full ratio for each senator. * * * The ratio for apportioning senators shall always be obtained by dividing the number of inhabitants, excluding aliens, by fifty, and the senate shall always be composed of fifty members, except that if any county having three or more senators at the time of any apportionment shall be entitled on such ratio to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent."

Section 4 sets forth a complicated formula under which in appropriate circumstances the size of the Senate is increased. This provision requires that additional Senate districts be created on the basis of each county having more than three full ratios. This involves a two-step process whereby the largest counties in the State are given a total number of Senators computed on the basis of how many full "ratios" could be divided into the county's population. A "ratio" is the number resulting from the division of the State's entire population by 50. The size of the Senate is increased by the number of ratios that can be divided into the large county's population in excess of the number of Senators that that county had in 1894.

Under the formula Suffolk County, which was included with Richmond County in one Senate district in 1894, was treated as one unit in determining its number of first ratios under the 1970 census. Its combined population of 1,422,473 totaled three and eight-ninth's first ratios. Since this combined area was represented by two Senators in 1894, an increase of two in the size of the Senate resulted. Appellant Schwartz does not challenge the validity of this increase of two Senators. In 1894 Queens and Nassau Counties comprised only the County of Queens with one Senator. Chapter 11 using the aggregate population of these two counties as reported in the 1970 census of 3,416,012 computed that there were nine full ratios and, by reason of such increase, there should be added to the size of the Senate, eight new Senators. Therefore, the increase of the Senate from 50 Senators to 60 Senators was in compliance with the formula set forth in section 4 of article III of the State Constitution.

As the Court of Appeals stated in *Matter of Fay* (291 N. Y. 198, 218), which upheld the Reapportionment Act of 1943, '' we think the Legislature has not enacted a statute which ' beyond reasonable doubt * * * conflicts with the fundamental law ' ''.

Appellant Schwartz also contends that the bill in question was not on the desks of the legislators for three calendar days as required by section 14 of article III of the State Constitution. The facts and underlying purpose of this provision do not support appellant's contention. The bill was originally placed on the desks of the legislators at 10:00 A.M. on Wednesday, December 15, 1971. Certain printing errors were found, however, and the bill was returned to the printer for corrections. The reprinted bill was then returned and placed on the desks of the legislators between 11:15 P.M. and 11:40 P.M. that same evening. The bill was then passed on Saturday, December 18, 1971.

The three-day requirement clearly was fulfilled. Section 19 of the General Construction Law provides that: '' A calendar day includes the time from midnight to midnight.'' Thus, the law does not recognize fractions of a day. Appellant argues that one hour on Wednesday which the bills in corrected form were on the legislators' desks does not meet the underlying constitutional purpose of giving the legislators an opportunity to learn about and get public reaction to the bill. This argument, however, ignores that no one objected to this alleged deficiency on the day of the voting; the legislators had maps which accurately described their districts and all districts in question Wednesday morning prior to adjournment; and, consequently, the legislators had the knowledge on Wednesday morning sought to be protected by the constitutional three-day rule. That technical printing errors had to be corrected is in no way comparable to secretively placing a bill on a legislator's desk in the middle of the night as this argument might suggest. The three-day requirement was, therefore, complied with.

Appellant Schwartz also raises the point that the census data upon which the reapportionment is based is not final and complete. Appellant sought discovery of the maps and census figures used by the Joint Legislative Committee on Reapportionment, but his motion for inspection was denied by Special Term. Pursuant to subdivision (b) of CPLR 3214, respondents' notice of motion automatically stayed appellant's discovery. Special Term denied the discovery because it granted respondents' motion for summary judgment.

Appellant already appears to have the latest census data available to him, thus the main purpose of the inspection has already been fulfilled. The computer tapes used by the committee were furnished by the Bureau of the Census and were made equally available to regional planning boards throughout the State. These tapes then were readily available and any inaccuracies or errors in the committee's data should have been readily apparent by comparing it with official data from the Bureau of the Census.

On October 15, 1971, the Bureau of the Census advised the committee by letter that its review of the 1970 census was complete and the figures submitted were accurate. Accordingly, the population statistics used in drawing the district lines described in chapter 11 were based on the latest corrected Federal census figures.

The order and judgment should be affirmed, without costs.

HERLIHY, P. J., GREENBLOTT, SWEENEY and REYNOLDS, JJ., concur.

Order and judgment affirmed, without costs.