Dear The Honorable Thomas V. Mike Miller, Jr.
You have asked for our opinion concerning one of the constitutional requirements that governs the drawing of legislative districts in Maryland. Specifically, you have asked whether a district that is intersected by navigable water satisfies the requirement of contiguity — i.e., that the district consist of adjoining territory — when no bridge, tunnel, or ferry connects the land on either side of the water.
Following a review of the history of the constitutional provision, Maryland case law, and case law on analogous provisions in other jurisdictions, it is our opinion that contiguity is not interrupted by navigable water, regardless of whether the water is spanned by a bridge or tunnel or is crossed by a ferry. However, a district that crossed the Chesapeake Bay to include portions of its western and eastern shores might be subject to challenge.
 I The Requirement of Contiguity
A. Constitutional Requirement
The State Constitution briefly states four criteria for drawing legislative districts:
 Each legislative district shall consist of adjoining territory, be compact in form, and of substantially equal population. Due regard shall be given to natural boundaries and the boundaries of political subdivisions.
Maryland Constitution, Article III, § 4. The requirement that legislative districts consist of adjoining territory is often referred to as the "contiguity" requirement. See, e.g., In reLegislative Districting, 299 Md. 658, 675, 475 A.2d 428 (1984).
B. History of Constitutional Requirement of Contiguity
To the extent that legislative history exists with respect to the current version of Article III, § 4, it is unenlightening on the requirement of contiguity.[1] However, the current provision resembles § 3.04 of the Proposed Constitution of 1968, which was rejected by the voters. In addition to requiring districts of "substantially equal" population, § 3.04 would have required that "[e]ach district shall consist of adjoining territory and be compact in form. Due regard shall be given to natural boundaries and the boundaries of political subdivisions." After the rejection of the Proposed Constitution of 1968, much of the language of proposed § 3.04 was adopted as an amendment to the State Constitution.See Chapter 785, Laws of Maryland 1969, ratified
November 3, 1970; Chapter 363, Laws of Maryland 1972,ratified November 7, 1972.[2]
The record of the floor debate at the constitutional convention that drafted the Proposed Constitution of 1968 is instructive.[3] That record includes several references to the contiguity requirement of § 3.04.[4]
These references suggest that there was no intent to prevent legislative districts from crossing bodies of water other than the Chesapeake Bay.
First, during the floor debate, an amendment was proposed to substitute the term "adjoining land area" for "adjoining territory." That amendment was rejected, apparently out of concern that the reference to "land area" would prevent a legislative district from crossing a body of water. Proceedings of the Constitutional Convention at 6315-16, 6332-6335 (December 1, 1967). The Chairman of the Committee on the Legislative Branch concluded that "we can't use a prohibition about crossing a body of water." Id. at 6335.
Later, another amendment was offered to specifically prohibit the creation of a district "that crosses the center of the Chesapeake Bay." Id. at 6525-28. However, when it appeared that this amendment might also prevent the creation of a district that crossed the Susquehanna River (which some delegates characterized as part of the Bay), the Committee Chairman expressed a concern that "if we start adding tributaries, estuaries, and other bodies of water. . . we won't know where we stand." The Chairman stated that he would support the amendment only if it were limited to the Bay. Id. at 6529-31, 6539-40. As a result, the proposed amendment was withdrawn.Id. at 6541-42. After the amendment was withdrawn, the Committee of the Whole placed on the record a statement that it was "our intention that under the interpretation of the words, adjoining and compact, . . . a redistricting Commission or the General Assembly could not form a district, either a Senate district or a Delegate district, by crossing the Chesapeake Bay."Id. at 6574-75.
Finally, it is notable that, during the debates, both the Chairman of the Committee on the Legislative Branch and the Chairman of the Convention both expressed the view that the term "territory" included water, so that crossing a body of water would not violate the contiguity requirement. Id. at 6334, 6738, 6749-50.
Thus, it appears that a majority of the drafters of the contiguity requirement included in the Proposed Constitution of 1968 — a requirement that ultimately became part of the State Constitution — did not intend for it to prohibit a district from crossing a body of water. No requirement was expressed that the water be spanned by a bridge or tunnel or be served by a ferry. The only qualification to this conclusion is that a majority of the convention delegates expressed the view that a district that crossed the Chesapeake Bay could not simultaneously satisfy both the compactness and contiguity requirements. Given the similarity in language between the proposed § 3.04 that emerged from those debates and current Article III, § 4, it is reasonable to conclude that the contiguity requirement of Article III, § 4 is not ordinarily violated when a proposed district is intersected by a body of water.
C. Maryland Cases
The Court of Appeals has twice discussed the meaning and interplay of the factors in Article III, § 4.Legislative Redistricting Cases, 331 Md. 574, 629 A.2d 646
(1993); In re Legislative Redistricting, 299 Md. 658,475 A.2d 428, appeal dismissed, 459 U.S. 962
(1982). The criteria of contiguity, compactness, and due regard for natural and political boundaries all relate to the physical configuration of a district. Although these criteria, as well as the additional factor of "substantially equal population," are all intended to "ensure the fairness of legislative representation," the Court has observed that they "tend to conflict in their practical application." 299 Md. at 681. Moreover, the three criteria that relate to physical configuration must contend with Maryland's "bizarre geographic configuration . . . further fragmented by numerous other rivers, water bodies and topographic irregularities." Id. at 686-87.
The Court has eschewed any mechanical formulation of the three geographical criteria, but rather has taken a practical approach that looks to their underlying purpose. For example, it refused to find a violation of the compactness requirement based on mere irregularities of shape; rather, there must be evidence that the intent was "to produce an unfair political result, that is, to dilute or enhance the voting strength of discrete groups for partisan political advantage or other impermissible purposes."Id. at 687.
While the Court of Appeals has never ruled on a challenge to a proposed district's contiguity, it has offered the following definition of the requirement:
 The contiguity requirement mandates that there be no division between one part of a district's territory and the rest of the district; in other words, contiguous territory is territory touching, adjoining and connected, as distinguished from territory separated by other territory.
299 Md. at 675. The Court drew that definition from two New York cases, which make clear that "the requirement of contiguity is not necessarily violated because part of a district is divided by water." Schneider v. Rockefeller, 31 N.Y.2d 420, 430,293 N.E.2d 67 (1972). In one of those cases, the Court of Appeals of New York held that Richmond County (Staten Island), an island in New York Harbor, is contiguous to counties on other islands across the harbor — e.g., Kings County (Brooklyn) and New York County (Manhattan) — under the common meaning of the term. In re Sherrill, 188 N.Y. 185,207, 81 N.E. 124 (1907).
Maryland cases considering the concept of "adjoining territory" in other contexts confirm that the Maryland courts would likely adopt the position of the New York cases, that separation of two areas by navigable water does not render them non-contiguous for purposes of legislative districting. See AnneArundel County v. Annapolis, 352 Md. 117, 721 A.2d 217
(1998) (in context of municipal annexation statute, land separated by waterways is "contiguous"); Gruver-Cooley v.Perlis, 252 Md. 684, 251 A.2d 589 (1969) (adopting broad definition of "adjoining" in holding that subdivisions separated by a street were "adjoining" for purposes of county zoning code);see also 82 Opinions of the Attorney General ___ (1997) [Opinion No. 97-005 (February 13, 1997)] (construing phrase "contiguous and adjoining" in municipal annexation statute).
Thus, Maryland case law suggests that the constitutional contiguity requirement alone does not bar the creation of a district that crosses navigable water.
D. Other Out-of-State Authority
Courts in other jurisdictions that have considered challenges to districts divided by water have concluded that those districts satisfy contiguity requirements.
For example, in In re Senate Joint Resolution 2G, SpecialApportionment Session 1992, 597 So.2d 276 (Fla.),amended on other grounds, 601 So.2d 543 (Fla. 1992), certain proposed districts were challenged on the basis that it was impossible to travel throughout them without crossing into other districts, because of the presence of bodies of water, as well as a lack of roads. The Supreme Court of Florida held that the contiguity requirement in the Florida Constitution requires that all of a district be in actual contact and touching along a boundary or at same point, and that a district lacks contiguity when a part is isolated from the rest by the territory of another district. Id. at 279. Nevertheless, the court stated:
 Although a contiguous district has been defined as one in which a person can go from any point within the district to any other point without leaving the district, such a definition does not impose a requirement of a paved, dry road connecting all parts of a district. Contiguity does not require convenience and ease of travel, or travel by terrestrial rather than marine forms of transportation.
Id. The court held that "the presence in a district of a body of water without a connecting bridge, even if it necessitates land travel outside the district in order to reach other parts of the district, does not violate this Court's standard for determining contiguity under the Florida Constitution." Id. at 280.[5]
In Mader v. Crowell, 498 F. Supp. 226 (M.D.Tenn. 1980), a three-judge federal district court interpreted a contiguity requirement in the Tennessee Constitution. It held that contiguity is "solely a territorial concept," that is lacking only when part of a district is separated from the remainder of the district by the territory of another district.Id. at 229. The court found that the challenged district was contiguous, even though a portion was isolated from the rest of the district by the Tennessee River and there was no bridge or ferry affording ready transportation from one side of the river to the other. The court held that the concept of contiguity did not require that a person be able to travel around the district by land, as opposed to water, stating that "convenience or ease of travel is [not] an essential element of contiguity."Id.
Other courts have reached similar conclusions in other states.Vigo County Republican Central Committee v. Vigo County,834 F. Supp. 1080, 1087 (S.D.Ind. 1993) (district divided by Wabash River did not lack contiguity, even though no bridge or other structure allowed foot or motor passage across the river, as there was no showing that the river could not be crossed by water craft); Board of Supervisors v. Blacker, 52 N.W. 951
(Mich. 1892) (islands may be considered contiguous, "although separated by wide reaches of navigable waters"); Stenson v.Secretary of State, 13 N.W.2d 202 (Mich. 1944); Jamersonv. Womack, 1991 WL 835368 (Cir.Ct. Va. 1991).
Given the extensive network of rivers and inlets in Maryland, we do not believe that Maryland courts would deviate from the treatment of navigable water adopted in other jurisdictions with respect to the issue of contiguity.
 III Conclusion
In our opinion, a legislative district that is divided by a body of navigable water, even though that water is not spanned by a bridge or tunnel or crossed by a ferry, does not violate the contiguity requirement of Article III, § 4. However, a district that crossed the Chesapeake Bay to join portions of its western and eastern shores might be subject to challenge.
 J. Joseph Curran, Jr. Attorney General
 Kathryn M. Rowe Assistant Attorney General
Robert N. McDonaldChief Counsel
Opinions Advice
[1] Before it was amended during the 1970's to set criteria for drawing legislative districts statewide, Article III, § 4 of the State Constitution had concerned the drawing of legislative districts in Baltimore City alone. (During that period, Baltimore City was the only jurisdiction divided into multiple districts.)
[2] Proposed Section 3.04 had included all four criteria compactness, contiguity, due regard for natural and political boundaries, and substantially equal population. The 1970 constitutional amendment established similar criteria, but omitted the provision regarding due regard for natural and political boundaries. The 1972 amendment substituted the current version of Article III, § 4, including all four criteria.
[3] The General Assembly's obvious reliance on the 1968 proposal means that the background materials to the 1968 proposal are relevant legislative history, analogous to a report of a study group that culminates in legislation.
[4] In the floor debate, the provision is referred to as "§ 3.02," as it was originally numbered in the draft under consideration by the convention.
[5] See also Lawyer v. Department of Justice,521 U.S. 567, 581 n. 9 (1997) (noting, with respect to a revised Florida districting plan, that many Florida districts cross bodies of water as a necessary result of the geography of that state).
 *Page 190